WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Beram, | No. CV-21-08063-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| City of Sedona, et al., | |
| Defendant. | |

Pending before the Court is Defendant City of Sedona's ("Defendant") Motion to Dismiss Plaintiff Sabrina Beram's ("Plaintiff") Amended Complaint (Doc. 27). Plaintiff filed a Response in Opposition (Doc. 30), and Defendant filed a Reply (Doc. 34). Also pending before the Court is Plaintiff's Motion for Leave to file a Proposed Second Amended Complaint ("PSAC") (Doc. 33). Defendant filed a Response in Opposition (Doc. 35). Plaintiff did not file a Reply, and the time in which to do so has passed. *See* LRCiv 7.2(d).

**I.   Background**

This case concerns Sedona Code 9.10.010 (the "Code"), which prohibits, among other things, persons from sleeping in their cars, even when on private property. The Code provides, in relevant part:

> "9.10.010 Camping and sleeping in certain places.
> A. It shall be unlawful for any person to set up, use or maintain any temporary structure, tent, bag, vehicle, camper or any other thing for the purpose of camping, lodging, sleeping, cooking, or starting or maintaining a campfire,

or establishing a temporary place of rest, on any public property within the city limits unless exempted by the following subsections.

B. It shall be unlawful for any person to set up, use or maintain any temporary structure, tent, bag, vehicle, camper or any other thing for the purpose of camping, lodging, sleeping, cooking, or starting or maintaining a campfire, or establishing a temporary place of rest, on any private property within the city limits unless exempted by the following subsections.

C. It shall be unlawful for any person to sleep in or upon any public building, alley, sidewalk, public way, or any federal, state, county or municipal designated trail head, or any property owned, operated or managed by any local, state or federal agency or department or any Indian tribe, or any other public place or facility within the corporate limits of the city.

D. It shall be unlawful for any property owner of any private property, or any manager, renter, lessee or agent thereof, to knowingly permit any person to violate this section.

E. No person shall be arrested for a violation of any provision in this section unless such person continues to engage in such conduct after warning by any police officer, an authorized representative of the government entity managing or responsible for such public property, or the property owner, manager, renter, lessee or agent thereof, as the case may be, or unless such property is conspicuously posted, warning of the provisions of subsection (A), (B) or (C) of this section, and designating such violation thereof as a misdemeanor.

. . . .

K. Any violation of this section shall constitute a class 1 misdemeanor punishable by a fine of not less than $2,500 or by six months in jail, or both. [Code 2006 § 10-3-1].

9 S.C.C. § 9.10.010 (2021).[1]

Plaintiff suffers from a severe, chronic obsessive-compulsive anxiety ("OCD"). (Doc. 26 at ¶ 5). When Plaintiff cannot complete her apartment cleaning rituals in time to obtain a restful sleep, she experiences a compulsion that commands her not to enter her apartment beyond the tiles inside the door. (*Id.* at ¶ 6). When this occurs, Plaintiff sleeps in her vehicle because the cleaning routines are easier to perform than her apartment rituals.

---

[1] The Court omitted sections F, G, H, I, and J.

- 2 -

(*Id.* at ¶ 8). Plaintiff alleges she sleeps in her vehicle one-third to one-half of the nights of any given week. (*Id.* at ¶ 9). Plaintiff's OCD began when she was a child, and she has received various mental health treatments. (*Id.* at ¶ 10). Plaintiff alleges she sleeps in her vehicle solely because of her disability. (*Id.* at ¶ 14). Plaintiff therefore alleges "[t]he Code's prohibition against sleeping in a vehicle in all public and private places in Sedona injures [her] constitutional rights to liberty, privacy and to be free from unreasonable searches and seizures." (Doc. 33 at ¶ 69).

In November of 2020, while sleeping in her vehicle at a trailhead, Plaintiff alleges she received a warning from a police officer who informed her she could not sleep there. (*Id.* at ¶ 16). Plaintiff alleges "the officer told her that he put a note in a file associated with her name and license plate so police would know that he warned her." (*Id.*) Around that same time, Plaintiff alleges her property manager also warned she could not sleep in her vehicle on the premises of her apartment complex because her conduct violated the Code. (*Id.* at ¶ 23). Plaintiff alleges she "has not slept in her vehicle at a trailhead since that warning was given to her [but] has slept in her vehicle in various public and private spaces." (*Id.* at ¶¶ 15–16).

On February 10, 2021, Community Legal Services, Inc. ("CLS"), sent a letter to Defendant on Plaintiff's behalf requesting a reasonable modification to the Code under the Americans with Disabilities Act ("ADA") that would relieve Plaintiff from any penalty attached to a violation of the Code due to her disability. (*Id.* at ¶ 23). On February 22, 2021, Defendant denied Plaintiff's request for a reasonable modification. Defendant first denied Plaintiff's request on the grounds that it was not related to a public accommodation that required the City's ADA compliance.[2] (Doc. 27 at 17). Defendant further stated that even if the ADA did apply to Plaintiff's request, it was too broad because Plaintiff's

---

[2] In assessing the sufficiency of a complaint on a motion to dismiss, a court may also consider evidence on which the complaint relies if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court will consider the reasonable modification letter and the parties subsequent email thread. Plaintiff cites to this letter and the emails in her PSAC (Doc. 33 at ¶ 28–31), the letter and the emails are central to her claim, and neither party has questioned their authenticity.

- 3 -

proposed modification exempting her from all application of the Code "would ostensibly mean [she] could sleep anywhere within the jurisdiction of the City of Sedona, not only in her car in the parking lot of her current apartment complex, but on any other private or public property in the City." (*Id.* at 17).

On February 24, 2021, CLS emailed Defendant a revised modification request, proposing that Defendant refrain from charging Plaintiff with violation of the Code if she sleeps in her vehicle in the parking areas appurtenant to her current apartment. (Doc. 26 at ¶ 28; Doc. 27 at 21). On March 1, 2021, Defendant denied Plaintiff's proposed modified accommodation request. (Doc. 27 at 20). Defendant reaffirmed the reasons for its prior denial and also noted Plaintiff had failed to demonstrate that the accommodation was necessary under the Fair Housing Act because Plaintiff failed "to show that 'but for' the accommodation, she would be denied the opportunity to enjoy the housing of her choice." (*Id.*) Defendant explained "Ms. Beram's insufficient evidence does not demonstrate that "but for" the release from prosecution for sleeping in her car she is denied the opportunity to enjoy, not housing of her choice, but camping in a car on private property for which the owner is unwilling to allow such activity. The 'housing' Ms. Beram is stating is necessary as housing of her choice is actually a non-housing choice." (*Id.*) Defendant concluded that "it is not the City's ordinance that prevents Ms. Beram from at times using her apartment." (*Id.*)

CLS then requested that Defendant reconsider both of Plaintiff's modification requests, noting that Plaintiff's landlord felt "their hands [were] tied" by the Code and it would refuse to renew Plaintiff's lease "as long as [the Code] makes Ms. Beram's coping response to her mental illness a violation of Sedona's law." (Doc. 26 at ¶ 30; Doc. 27 at 20). Defendant did not respond. (Doc. 26 at ¶ 31).

A month later, on April 2, 2021, Plaintiff filed suit against the City of Sedona, and Plaintiff's landlord and property management company. (Doc. 1). Therein, Plaintiff alleged the Defendants violated her statutory rights under Title II of the ADA by denying her requests for a reasonable modification of the Code. She also alleged that the Code

violates her rights under the Eighth and Fourteenth Amendments of the U.S. Constitution. (*Id.*)  Plaintiff subsequently entered into a confidential settlement agreement with the landlord and property manager, and those parties were dismissed from this action, with prejudice.  (Docs. 25; 33 at ¶ 32).  While Plaintiff did not provide a copy of the settlement agreement to the Court, she now alleges "[t]he owner can invalidate the settlement agreement under specific circumstances that Plaintiff has no control over."  (*Id.* at ¶ 33). Plaintiff then filed her Amended Complaint, realleging her claims against the City of Sedona only.  (Doc. 26).

On July 16, 2021, Defendant moved to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6), contending Plaintiff lacks Article III standing to challenge the Code's constitutionality.  (Doc. 27 at 1).  Defendant argues Plaintiff lacks standing to bring an action under the ADA because Defendant has never applied or threatened to apply the Code to Plaintiff, and thus there is no threat of imminent enforcement of the Code against her.  (*Id.*)  Defendant further argues it has never denied Plaintiff any reasonable accommodation.  (*Id.*)  Finally, Defendant contends the Amended Complaint fails to demonstrate that the Code is *per se* unconstitutional under Eighth and Fourteenth Amendments.  (*Id.*)

After filing a Response to the Motion to Dismiss (Doc. 30), Plaintiff sought leave to file a second amended complaint because Plaintiff had "benefitted from a sharpening of the factual and legal issues in this case gained from responding to the motion to dismiss." (Doc. 33).  Defendant opposes Plaintiff's request to file a second amended complaint, arguing none of the proposed amendments cure Plaintiff's deficient standing to bring her claims. (Doc. 35 at 2). Defendant argues the additional allegations contained in the PSAC concern Plaintiff's perception of her fears of prosecution under the challenged Code, and allegations regarding the terms of the confidential settlement agreement with the prior named defendant/property owner.  (*Id.*)  But even with these additional allegations, Defendant claims the PSAC still does not allege a cognizable injury in fact under the case law applicable to pre-enforcement challenges.  (*Id.*)  Specifically, the new factual

allegations, Defendant contends, do not demonstrate that Defendant has threatened Plaintiff with imminent enforcement of the Code. (*Id.*)

The Court will first address the standing arguments made in both Defendant's Motion to Dismiss and the briefing on Plaintiff's Motion for Leave to File a PSAC.

## II.   Legal Standards

Motions to dismiss for lack standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1066 (9th Cir. 2011). "Each element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* at 1068 (alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

### A. Standing

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019) (citation omitted). Where, as here, a plaintiff challenges a statute before its enforcement, "generalized threats of prosecution do not confer constitutional ripeness." *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017).[3] Instead, "a genuine threat of imminent prosecution" must exist. *Id.* (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). In assessing whether there exists a "genuine" risk of prosecution to establish an imminent injury, courts in the Ninth Circuit consider three factors: (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged

---

[3] The Court notes the injury in fact and ripeness query are virtually the same. *See Thomas*, 220 F.3d at 1138 ("[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

- 6 -

statute. *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (quoting *Thomas*, 220 F.3d at 1139).

In their briefing, the parties focus their arguments on the imminency of Plaintiff's alleged injury, and specifically whether Plaintiff has demonstrated "a credible threat of prosecution." 920 F.3d at 608. Defendant argues that Plaintiff lacks standing to maintain her Eighth Amendment claim against the City because the Code has never been applied against Plaintiff and because Plaintiff cannot "demonstrate an imminent, genuine threat of harm traceable to the City." (Doc. 27 at 2–3). Thus, argues Defendant, "Plaintiff has [] not suffered an 'injury in fact.'" (*Id.*) Defendant argues Plaintiff lacks standing to maintain her ADA claim for the same reasons. (Doc. 34 at 5).

The imminence required to show an injury-in-fact, although "a somewhat elastic concept," must be "*certainly* impending." 920 F.3d at 608. "A plaintiff need not, however, await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." *Id.* "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, [s]he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). So, too, under the ADA, a plaintiff must demonstrate a "'real and immediate threat of repeated injury' in the future" to establish standing to pursue injunctive relief. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). A plaintiff need not, however, "'await the consummation of threatened injury to obtain prospective relief.'" *Id.* at 949.

Plaintiff alleges "[s]ubsection E of the Code defines warnings that, once given, can lead to a next step of arrest or citation for violating the code." (Doc. 33 at ¶ 47). Plaintiff claims the warnings she received in November of 2020 from a Sedona police officer and the communications from Plaintiff's property manager in November of 2020 qualify as warnings under subsection E and reveal the City's intent to prosecute her. (*Id.* at ¶ 49). Despite the warnings, she avers that she "will continue to sleep in her vehicle in various

public and private spaces in Sedona at least three times each week in the future because of her disability." (*Id.* at ¶ 37). Thus, Plaintiff alleges she "risks imminent future imprisonment and fine under the Code." (*Id.* at ¶ 50).

Applying the *Clark* factors here, the Court finds Plaintiff's claimed injury—her fear of enforcement or prosecution under the Code—insufficiently shows the imminency required for an injury in fact. *Thomas*, 220 F.3d at 1139. Although Plaintiff has articulated a concrete plan to violate the Code, e.g., she alleges she "will continue to sleep in her vehicle in various public and private spaces in Sedona at least three times each week in the future because of her disability" (Doc. 33 at ¶ 37), the second and third factors decidedly weigh against her.

As to the second factor, Plaintiff alleges she has received a warning from a police officer for sleeping at a trailhead that has been put in the system. (*Id.* at ¶ 16). She does not state, however, that there has been a threat to initiate any proceedings against her. In this regard, the Court finds *O'Callaghan v. City of Portland* instructive. 2021 WL 2292344, at *3 (D. Or. June 4, 2021). There, the court found a plaintiff lacked standing to bring an Eighth Amendment claim where, despite officers having swept plaintiff's campground twenty-five times, he was never prosecuted or fined for violating an anticamping ordinance. *Id.* Here, Plaintiff has received only one verbal warning from an officer to not sleep at a public trailhead. *Cf. Martin*, 920 F.3d at 610 (finding a credible threat of enforcement existed where the Boise Police Department "issued over 175 such citations," despite the City's contention it did not enforce the ordinances when the shelters were full). Apart from the officer's verbal warning, the record is devoid of any threats to initiate proceedings against her under the Code, notwithstanding Plaintiff's continued violations of the Code.[4]

Plaintiff also argues her property manager's warning to not sleep in her vehicle on her apartment complex supports her argument for imminent prosecution under the Code. (Doc. 33 at ¶ 49). This warning, however, is moot because Plaintiff entered into a

---

[4] Defendant further avers "in light of *Martin v. Boise*, the City generally does not prosecute sleeping in public places when there is no room at a homeless shelter . . . ." (Doc. 27 at 18).

- 8 -

settlement agreement that permits her to sleep in her vehicle on the apartment complex property. (*Id.* at ¶ 33). Despite this agreement, Plaintiff nonetheless alleges she is not completely protected because the owner can invalidate the agreement for circumstances under which she has no control. (*Id.*) Without more, the Court finds this allegation speculative to state a "certainly impending" threat of injury for standing purposes. *Martin*, 920 F.3d at 608.

The third factor to be considered is the history of enforcement under the statute. Aside from the two warnings above, it is clear that the City has not enforced the Code against Plaintiff personally. Indeed, Plaintiff has yet to even receive a citation under the Code, despite the "193 times" she has slept in her vehicle. (Doc. 33 at ¶ 35). Nor does Plaintiff's PSAC contain any allegations of general past prosecution or enforcement of the Code. In the sixteen years since the Code's enactment, Plaintiff's PSAC does not allege a single incident in which a person has been criminally prosecuted. This is unlike the history of enforcement of the ordinances in *Martin*, where the City regularly issued citations for violating both ordinances. *See* 920 F.3d at 610 (finding that "during the first three months of 2015, the Boise Police Department issued over 175 such citations").

To be sure, Plaintiff need not await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute. She is, however, required to show a credible threat of prosecution. Plaintiff here has admittedly violated the Code hundreds of times over the course of more than a year, and yet has never been cited. (Doc. 33 at ¶ 35). Moreover, both warnings she received appear to be moot because of the settlement agreement she reached with her property manager that permits her to sleep in her vehicle on her apartment complex premises. In other words, because Plaintiff now has permission from her landlord to sleep in her car on her apartment complex parking lot, she no longer needs to sleep in her car on public property. Plaintiff has therefore not alleged more than a conjectural or hypothetical chance that she will suffer any harm by Defendant. *See Thomas*, 220 F.3d at 1140 (finding "[t]he threat of enforcement based on a future violation—which may never occur—is beyond speculation.").

Considering the factors, Plaintiff's threat of enforcement or prosecution under the Code—though theoretically possible—is not imminent. The alleged threat is wholly contingent on whether Defendant will prosecute her landlord for the settlement agreement he entered into with Plaintiff; whether her landlord will subsequently invalidate their settlement agreement; and whether Defendant will then decide to prosecute Plaintiff for sleeping in her vehicle on public or private property in the City. Thus, at this juncture, Plaintiff does not have "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."[5] *Babbitt*, 442 U.S. at 298.

Accordingly, as presently alleged, the factual allegations do not adequately rise to the level of actual or imminent harm and, as a result, Plaintiff has not pleaded sufficient facts to demonstrate an injury on which to establish constitutional standing.

**III.   Leave to Amend Complaint**

Federal Rule of Civil Procedure 15(a) requires that leave to amend "shall be freely given when justice so requires." A district court may, however, deny leave to amend upon consideration of several factors, including prejudice to the opposing party, bad faith, undue delay, and futility. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

The Court finds that granting leave to file the second amended complaint, as proposed, would be futile. Denial for futility is proper "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin*, 59 F.3d at 845. Although the PSAC includes further factual allegations about the warnings Plaintiff received from a Sedona police officer and Plaintiff's property manager (Doc. 33 at ¶¶ 16, 23, 33–35, 47–49), Plaintiff fails

---

[5] Plaintiff makes the same imminent threat of enforcement allegations under her ADA claim as she does under her Eighth Amendment claim. (Doc. 33 at ¶¶ 47–50). Therefore, her claim here fails for the same reasons her Eight Amendment claim fails, i.e., because she entered into a settlement agreement with her property manager that appears to have changed the substantive factual basis under which she requested the accommodation in the first place, thus making her accommodation request moot. In other words, Plaintiff faces no imminent threat of prosecution on private property because her landlord has agreed to let her sleep there.

to develop these allegations in such a way that demonstrates she has standing.

Because the PSAC fails to cure the substantive deficiencies regarding Plaintiff's standing to assert her claims, it necessarily follows that the first amended complaint also fails. The Court need not determine whether Plaintiff's Amended Complaint states a claim under the ADA or whether the Code is unconstitutional under the Eighth Amendment because Plaintiff has not established Article III's standing requirements. *Hart*, 2019 WL 3767005, at *1 ("[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits."). The Court will therefore grant Defendant's Motion to Dismiss.

The Court will, however, allow Plaintiff to file a motion for leave to amend. The PSAC contains an allegation that the owner and managing agent of Plaintiff's apartment "are concerned that Defendant could charge them with violation of subsection D of the code because they granted Plaintiff's reasonable accommodation request to permit her to sleep in her vehicle on their property." (Doc. 33 at ¶ 34). To the extent that Plaintiff can show that her property manager has invalidated the settlement agreement and/or Defendant intends to prosecute Plaintiff despite the agreement, she may be able to allege sufficient injury giving her standing to challenge the Code.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend (Doc. 33) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 27) is **granted**.

…

…

…

…

…

…

…

**IT IS FINALLY ORDERED** that Plaintiff may file a motion seeking leave to file a third amended complaint no later than **fourteen (14) days** after the entry of this Order. If Plaintiff does not seek leave to file a amended complaint by **March 14, 2022**, the Clerk of Court shall dismiss this action without further order of this Court.

Dated this 28th day of February, 2022.

Honorable Diane J. Humetewa
United States District Judge