**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Beram, | No. CV-21-08063-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| City of Sedona, et al., | |
| Defendant. | |

Plaintiff Sabrina Beram ("Plaintiff") filed a Motion for Leave to File a Third Amended Complaint ("TAC") claiming that the prior deficiencies are now cured. (Doc. 38). Defendant City of Sedona ("Defendant") filed a Response in Opposition (Doc. 39), and Plaintiff filed a Reply (Doc. 41).[1] The Court must now decide whether Plaintiff has alleged sufficient injury to give her standing to challenge Sedona Code 9.10.010 (the "Code"), a city ordinance that prohibits, among other things, persons from sleeping in their cars even when on private property.

**I.  Background**

Plaintiff has filed three complaints in this matter: her original Complaint (Doc. 1), her Amended Complaint (Doc. 26), and her proposed Second Amended Complaint ("SAC") (Doc. 33). In her TAC, Plaintiff alleges a violation of Title II of the Americans

---

[1] Plaintiff subsequently filed a Notice of Supplemental Authority (Doc. 42), to which Defendant has filed an Objection (Doc. 43). Plaintiff's Supplemental Authority is immaterial because the issue before this Court is the second and third factors of the *Clark* test, which are not discussed in *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022).

with Disabilities Act ("ADA") and a violation of the Eighth and Fourteenth Amendments. (Doc. 38 at ¶¶ 59–89). The Court previously granted Defendant's Motion to Dismiss Plaintiff's proposed SAC because she failed to establish that she had standing to challenge the Code. (Doc. 37 at 11).

Plaintiff's SAC alleged that in November 2020, a police officer had warned her she was in violation of the Code for sleeping in her car at a public trailhead. (Doc. 33 at ¶ 16). The officer informed her a note had been put in her file. (*Id.*) That same month, the Plaintiff's apartment complex manager also sent her an email threatening to terminate her lease unless she ceased sleeping in her vehicle on the complex's premises. (*Id.* at ¶ 17). Plaintiff and her property manager ultimately entered into an agreement allowing her to sleep in her vehicle on the premises. (*Id.* at ¶ 32). Despite her plan to continue sleeping in her car and violating the Code, Plaintiff did not allege that either Defendant or her property manager threatened to initiate proceedings against her. (Doc. 37 at 8). The Court thus concluded Plaintiff's allegations were speculative and did not state a "certainly impending" threat of injury. (*Id.* at 9).

The Court nonetheless allowed Plaintiff to file a TAC because she alleged the owner and managing agent of her apartment were "concerned that Defendant could charge them with violation of subsection D of the Code[2] because they granted Plaintiff's reasonable accommodation request to permit her to sleep in her vehicle on their property." (Doc. 33 at ¶ 34). The Court thus stated if "Plaintiff can show [1] that her property manager has invalidated the settlement agreement and/or [2] Defendant intends to prosecute Plaintiff despite the agreement, she may be able to allege sufficient injury giving her standing to challenge the Code." (Doc. 37 at 11).

**II.    Discussion**

The proposed TAC realleges Plaintiff's Americans with Disabilities Act ("ADA") and Eighth Amendment claims. (Doc. 38 at ¶¶ 59–89).

---

[2] That section states that "[i]t shall be unlawful for any property owner of any private property, or any manager, renter, lessee or agent thereof, to knowingly permit any person to violate this section." 9 S.C.C. § 9.10.010(D) (2021).

As discussed in its prior Order, "[t]o establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019) (citation omitted). The injury in fact and ripeness query are virtually the same. *See Thomas*, 220 F.3d at 1138 ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

Where, as here, a plaintiff challenges a statute before its enforcement, "generalized threats of prosecution do not confer constitutional ripeness." *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017). Instead, "a genuine threat of imminent prosecution" must exist. *Id.* (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). In assessing whether there exists a "genuine" risk of prosecution to establish an imminent injury, we consider three factors: (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (quoting *Thomas*, 220 F.3d at 1139).

The parties' briefing focuses on the second and third *Clark* factors because the Court has already determined that Plaintiff has sufficiently alleged a concrete plan to violate the Code. (Doc. 37 at 8). Thus, the Court will now assess whether Plaintiff's proposed amendments cure the deficiencies previously noted. (*Id.* at 11).

### i. Specific Warning or Threat to Initiate Proceedings

Plaintiff's TAC once again contends the Sedona police officer and her property manager "threaten her ability to enjoy and use the housing and shelter of her choice." (Doc. 38 at 2). However, Plaintiff's Motion offers no support for her claim that the warnings she received in 2020 constitute an impending threat of prosecution under the Code. Plaintiff does not allege she has been given any further warnings or citations by Sedona officers, or

that they have warned her property manager that he is in violation of the Code for entering into an agreement that allows Plaintiff to sleep in her car on the premises. Accordingly, the Court declines to revisit its holding that these warnings are not a cognizable imminent injury to establish standing.

Plaintiff also argues the Court's prior Order dismissing her claims "is likely to be interpreted by the owner of the apartment complex . . . as approval of actions they may take to deny Plaintiff of the housing of her choice based on her vehicle on their private property" once Plaintiff's lease expires on May 31, 2022. (Doc. 38 at 2; ¶¶ 48–56). But the Court finds any alleged injury based on the property manager's interpretation of the Court's prior Order is speculative and insufficient. *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019); *see also Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) ("The touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'") (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). As of the date of this Order, Plaintiff's lease has either expired or been renewed; Plaintiff has not informed the Court of either. But there are no allegations to suggest that any time after May 31, 2022, the property manager refused to renew Plaintiff's lease with the agreed upon sleep accommodation because of criminal prosecution threats from Defendant. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (explaining the Supreme Court and Ninth Circuit have found the causal chain "too weak" to support standing at the pleading stage when based on "independent decisions" of third parties) (citing to *Allen v. Wright*, 468 U.S. 737, 757 (1984); *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

Last, Plaintiff argues, without citation to authority, that "[t]ermination of housing leases or denial of housing opportunities arguably causes the same injury that is prohibited by the federal Fair Housing Act," and so this termination should also be "an Article III injury under Title II of the ADA and the Eighth Amendment." (Doc. 38 at 2). Plaintiff argues the injuries she has suffered to her mental health are "directly attributable to Sedona's anti-homeless code and its enforcement scheme" which are generally cognizable

injuries to establish standing. (*Id.*) Plaintiff provides no authority for her proposition. Nor does she allege a Fair Housing Act violation. The Court therefore rejects the *potential* of her leases non-renewal and her resulting emotional harm as a sufficient injury for standing purposes.

### ii. History of Enforcement

The Court next considers the history of the Code's enforcement. Previously, the Court found that "[a]side from the two warnings [Plaintiff received from the Sedona officer and her property manager], it [was] clear that the City has not enforced the Code against Plaintiff personally." (Doc. 37 at 9). This was because Plaintiff had "yet to even receive a citation under the Code, despite the '193 times' she has slept in her vehicle." (*Id.*) The Court found this history of enforcement did not weigh in her favor. (*Id.*)

Now, Plaintiff has shifted her argument to rely on general past prosecutions under the Code. To support this proposition, she submits two citations arising from a single incident in October of 2021 against two persons who were sleeping in their vehicles on private property in Sedona.[3] (Doc. 38 at 46–70). She argues the citations "are evidence that she is subject to prosecution under Sedona's anti-homeless code as much as any other person who sleeps in a vehicle in Sedona and has been issued prior warnings under subsection E of S.C.C. 9.10.010." (*Id.* at 3). Plaintiff relies on *Adult Video Association v. Barr* to support this argument. 960 F.2d 781 (9th Cir.1991), *vacated sub nom. Reno v. Adult Video Ass'n*, 509 U.S. 917 (1993), *reinstated in part*, 41 F.3d 503 (9th Cir. 1994), *cert. denied*, 514 U.S. 1112 (1995). There, distributors of sexually explicit videos demonstrated a threat of prosecution by emphasizing the government's "active enforcement" of obscenity laws against other videotape distributors. *Id.* at 785. Plaintiff claims that under *Adult Video Association*, "[t]he two arrests[4] show evidence of a current

---

[3] It is unclear whether the vehicle was parked on the side of a public road or indeed on private property. The Arizona Ticket and Complaint describe the violation as "camping within city limits private property." (Doc. 38 at 53).

[4] The incident report indicates that the Sedona officer "issued criminal citations in lieu of arrest and advised [the campers] of their notice to appear." (Doc. 38 at 48). The campers "were cited and released on the scene without incident." (*Id.*)

determination by the Defendant to enforce its Code against the Plaintiff and persons similarly situated to her." (Doc. 41 at 5).

Plaintiff is correct that she "need not be the direct target of government enforcement" and "a history of past enforcement against parties similarly situated to the plaintiff cuts in favor of a conclusion that a threat is specific and credible." *Lopez*, 630 F.3d at 787. Here, however, it is impossible to tell whether Plaintiff is "similarly situated" to the individuals who were cited such that the enforcement "cuts in favor of a conclusion that a threat is specific and credible." *Id.*; *see also Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1211 n.10 (9th Cir. 2022) (finding defendant's action against other parties does not necessarily make the threat of enforcement against plaintiff credible). Those individuals' addresses are listed as "transient."   (Doc. 38 at 65; 67). Plaintiff, on the other hand, has an apartment. (Doc. 38 at ¶ 7). And although she alleges her disability causes her to sleep in her vehicle, she is not transient and indeed she does not allege she is. (*Id.* at ¶ 24). Accordingly, Plaintiff has still not alleged more than a conjectural or hypothetical chance that she will suffer any harm by Defendant. *See Thomas*, 220 F.3d at 1140 (finding "[t]he threat of enforcement based on a future violation—which may never occur—is beyond speculation.").

**III.   Conclusion**

Considering the second and third *Clark* factors, Defendants' threat of enforcement or prosecution of Plaintiff—though theoretically possible—is not imminent. The factual allegations in Plaintiff's proposed TAC remain inadequate to rise to the level of actual or imminent harm and she therefore does not have "a realistic danger of sustaining a direct injury as a result of the [Code]'s operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

The TAC fails to cure the substantive deficiencies regarding Plaintiff's standing to assert her claims. Accordingly, the Court need not determine whether Plaintiff's proposed TAC states a claim under the ADA or whether the Code is unconstitutional under the Eighth Amendment because Plaintiff failed to establish Article III's standing requirements.

*Hart v. Kennedy*, 2019 WL 3767005, at *1 (D. Ariz. Aug. 9, 2019) ("[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits.") (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).

Given the unique timeline, however, the Court acknowledges that the factual circumstances could have changed regarding Defendant's intention to enforce or actual enforcement of the Code against Plaintiff. If Plaintiff can allege facts that do more than speculate that the City of Sedona intends to enforce the Code against her, the Court will allow her one more chance to do so. *See* Fed. R. Civ. P. 15(a).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend (Doc. 38) is **denied**.

**IT IS FINALLY ORDERED** that Plaintiff may file a motion seeking leave to file a fourth amended complaint no later than **fourteen (14) days** after the entry of this Order. If Plaintiff does not seek leave to file a fourth amended complaint by **February 21, 2023**, the Clerk of Court shall dismiss this action without further order of this Court.

Dated this 7th day of February, 2023.

Honorable Diane J. Humetewa
United States District Judge