**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabrina Beram, | No. CV-21-08063-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| City of Sedona, et al., | |
| Defendant. | |

Plaintiff Sabrina Beram ("Plaintiff") filed a Motion for Leave to File a Fourth Amended Complaint ("FAC") claiming that the prior deficiencies are now cured. (Doc. 45). Defendant City of Sedona ("Defendant") filed a Response in Opposition (Doc. 47).[1] The Court must now decide whether Plaintiff has alleged sufficient injury to give her standing to challenge Sedona Code 9.10.010 (the "Code"), a city ordinance that prohibits, among other things, persons from sleeping in their cars on private property.

**I.  Background**

Plaintiff has filed and/or proposed five complaints in this matter: her original Complaint (Doc. 1), her Amended Complaint (Doc. 26), her proposed Second Amended Complaint ("SAC") (Doc. 33), and her proposed Third Amended Complaint ("TAC") (Doc. 38). All have been dismissed on standing grounds. (Docs. 37, 44). In her proposed FAC, Plaintiff alleges Defendant violated Title II of the Americans with Disabilities Act ("ADA") and the Eighth and Fourteenth Amendments. (Doc. 45-3 at ¶¶ 62–92).

---
[1] Plaintiff did not file a Reply.

**A. Defendant's Motion to Dismiss Plaintiff's SAC**

The Court previously denied Plaintiff's Motion for Leave to File a SAC and granted Defendant's Motion to Dismiss because she failed to establish that she had standing to challenge the Code. (Doc. 37 at 11).

Plaintiff's proposed SAC sought to allege that in November 2020, a police officer warned her she was in violation of the Code for sleeping in her car at a public trailhead. (Doc. 33 at ¶ 16). The officer informed her a note had been put in her file. (*Id.*) That same month, Plaintiff's apartment complex manager also sent her an email threatening to terminate her lease unless she ceased sleeping in her vehicle on the complex's premises. (*Id.* at ¶ 17). Plaintiff and her property manager ultimately entered into a settlement agreement allowing her to sleep in her vehicle on the premises. (*Id.* at ¶ 32). Despite her plan to continue sleeping in her car and violating the Code, Plaintiff did not allege that either Defendant or her property manager threatened to initiate proceedings against her. (Doc. 37 at 8). The Court thus concluded Plaintiff's allegations were speculative and did not state a "certainly impending" threat of injury. (*Id.* at 9).

The Court nonetheless allowed Plaintiff to file a TAC because she alleged the owner and managing agent of her apartment were "concerned that Defendant could charge them with violation of subsection D of the Code[2] because they granted Plaintiff's reasonable accommodation request to permit her to sleep in her vehicle on their property." (Doc. 33 at ¶ 34). The Court thus stated if "Plaintiff can show [1] that her property manager has invalidated the settlement agreement and/or [2] Defendant intends to prosecute Plaintiff despite the agreement, she may be able to allege sufficient injury giving her standing to challenge the Code." (Doc. 37 at 11).

**B. Plaintiff's Proposed TAC**

Thereafter, Plaintiff filed her Motion for Leave to file a TAC, realleging her ADA and Eighth Amendment claims. (Doc. 38 at ¶¶ 59–89). The Court denied Plaintiff's

---

[2] That section states that "[i]t shall be unlawful for any property owner of any private property, or any manager, renter, lessee or agent thereof, to knowingly permit any person to violate this section." 9 S.C.C. § 9.10.010(D) (2021).

- 2 -

Motion because Plaintiff's proposed amended pleading alleged no facts suggesting her property manager refused to renew her lease with the agreed upon sleep accommodation due to criminal prosecution threats from Defendant. (Doc. 44 at 4). The Court further rejected Plaintiff's argument of past prosecution under the Code because the Court could not discern whether Plaintiff was "similarly situated" to the two individuals who were cited such that the enforcement 'cuts in favor of a conclusion that a threat is specific and credible.'" (*Id.* at 6 citing *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1211 n.10 (9th Cir. 2022)). The Court accordingly found that "the factual allegations in Plaintiff's proposed TAC remain[ed] inadequate to rise to the level of actual or imminent harm and she therefore [did] not have "a realistic danger of sustaining a direct injury as a result of the [Code]'s operation or enforcement.'" (*Id.* citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Nonetheless, the Court once again allowed Plaintiff to seek leave to file a FAC because "the factual circumstances could have changed regarding Defendant's intention to enforce or actual enforcement of the Code against [her]." (*Id.* at 7). The Court further stated, "[i]f Plaintiff can allege facts that do more than speculate that [Defendant] intends to enforce the Code against her, the Court will allow her one more chance to do so." (*Id.*)

**II.   Discussion**

The proposed FAC realleges Plaintiff's ADA and Eighth Amendment claims. (Doc. 45-3 at ¶¶ 62–92). Plaintiff adds three factual allegations: First, she alleges she received an additional warning from a Sedona officer for sleeping in her vehicle in October of 2022. (*Id.* at ¶ 14). Second, she alleges she is transient when she is unable to enter her rented apartment due to her disability. (*Id.* at ¶ 21). Third, she alleges that when she sleeps in her vehicle because of her disability, "she is transient for purposes of comparison to other individuals who sleep in Sedona in vehicles who have been previously warned for violating the Code." (*Id.* at ¶ 24). The Court finds Plaintiff's three additional factual allegations are insufficient to show that Defendant intends to enforce the Code against her.

As discussed in its prior Orders, "[t]o establish Article III standing, an injury must

be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019) (citation omitted).  The injury in fact and ripeness query are virtually the same.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

Where, as here, a plaintiff challenges a statute before its enforcement, "generalized threats of prosecution do not confer constitutional ripeness." *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017).  Instead, "a genuine threat of imminent prosecution" must exist. *Id.* (citing *Thomas*, 220 F.3d at 1139).  In assessing whether there exists a "genuine" risk of prosecution to establish an imminent injury, we consider three factors: (1) "whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (quoting *Thomas*, 220 F.3d at 1139).

The Court has already determined that Plaintiff has sufficiently alleged a concrete plan to violate the Code.  (Doc. 37 at 8).  The Court will therefore only assess the second and third factors to determine whether Plaintiff's proposed amendments cure the deficiencies previously noted.  (*Id.* at 11).

**A.     Specific Warning or Threat to Initiate Proceedings**

For the second factor, the Court considers whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings.  The Ninth Circuit has stated that "[a]lthough we do not always require plaintiffs to await arrest or prosecution before entertaining a challenge to the constitutionality of a statute, the threat of enforcement must at least be 'credible,' not simply 'imaginary or speculative.'" *Thomas*, 220 F.3d at 1140.  A threat is insufficient if it "is wholly contingent upon the occurrence

of unforeseeable events." *Id.*

In its prior Order, the Court found Plaintiff offered no support for her claim that the warning she received in November of 2020 while sleeping in her vehicle at a public trailhead constituted an impending threat of prosecution under the Code. (Doc. 44 at 4). Plaintiff alleged "the officer told her that he put a note in a file associated with her name and license plate so police would know that he warned her." (Doc. 33 at ¶ 16). The Court noted, however, that Plaintiff alleged no further warnings or citations by Sedona officers, or that the officers warned her property manager he was in violation of the Code for entering into an agreement that allowed Plaintiff to sleep in her car on the premises. (*Id.*) The Court accordingly declined to revisit its holding that these warnings were not a cognizable imminent injury to establish standing. (*Id.*)

Plaintiff now alleges she received another warning from an officer in October of 2022 for sleeping at a Sedona Park. (Doc. 45-3 at ¶ 14). She alleges these two warnings were "an essential part of a plan by Defendant to enforce the Code." (*Id.* at ¶ 15). But the Court finds this additional warning insufficient to show the threat of enforcement is imminent. *Thomas*, 220 F.3d at 1139. Indeed, the officer did not claim Plaintiff would be prosecuted if she caught Plaintiff doing it again. Nor did the officer reference the alleged note in her file from the previous November 2020 warning. Plaintiff claims to have "slept in her vehicle in various public and private spaces in Sedona multiple times each week due to her disability." (*Id.* at ¶ 56). Yet she has received only one additional warning in the past two years. On this record, the Court finds the two warnings insufficient to support a specific warning or threat to initiate prosecution under the Code. *See Thomas*, 220 F.3d at 1140 (finding that in the twenty-five years the statutes had been on the books, there had been no criminal prosecutions and only two civil enforcement actions).

Therefore, the second factor does not weigh in Plaintiff's favor.

### B.     History of Enforcement

For the third factor, the Court considers the history of the Code's enforcement. In her Motion for Leave to file a TAC, Plaintiff shifted her theory to rely on general past

prosecutions under the Code. To support this premise, Plaintiff submitted two citations arising from a single incident in October of 2021 against two persons who were sleeping in their vehicles on private property in Sedona.[3] (Doc. 38 at 46–70). She reasoned that the citations were "evidence that she is subject to prosecution under Sedona's anti-homeless code as much as any other person who sleeps in a vehicle in Sedona and has been issued prior warnings under subsection E of S.C.C. 9.10.010." (*Id.* at 3).

The Court noted that Plaintiff was correct insofar as she "need not be the direct target of government enforcement" and "a history of past enforcement against parties similarly situated to the plaintiff cuts in favor of a conclusion that a threat is specific and credible." (Doc. 44 at 5 citing *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)). But the Court concluded it was impossible to tell whether Plaintiff was "similarly situated" to the individuals who were cited such that the enforcement would "cut[] in favor of a conclusion that a threat is specific and credible." (*Id.* citing *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1211 n.10 (9th Cir. 2022) (finding defendant's action against other parties does not necessarily make the threat of enforcement against plaintiff credible)). This was because those individuals' addresses were listed as "transient," and Plaintiff, on the other hand, had an apartment. (*Id.*) The Court therefore rejected Plaintiff's contention that she was similarly situated. (*Id.*)

Plaintiff now alleges she is transient when she is unable to enter her rented apartment due to her disability. (Doc. 45-3 at ¶ 21). She also alleges that when she sleeps in her vehicle because of her disability, "she is transient for purposes of comparison to other individuals who sleep in Sedona in vehicles who have been previously warned for violating the Code." (*Id.* at ¶ 24). Plaintiff thus argues she is "functionally transient" because she cannot sleep in her home or any other lodging for one or more nights due to her disability. (Doc. 45 at 2).

Defendant argues Plaintiff does not allege the two individuals cited were homeless,

---

[3] It is unclear whether the vehicle was parked on the side of a public road or indeed on private property. The Arizona Ticket and Complaint describe the violation as "camping within city limits private property." (Doc. 38 at 53).

- 6 -

had a disability, or otherwise indicate how they are similarly situated to Plaintiff. (Doc. 47 at 3). Defendant says the citation against those two individuals occurred on private property and thus Plaintiff still fails to show she is "similarly situated" to them because her warnings occurred in public areas. (*Id.*) Defendant also points to the public record between Plaintiff and the citing police officer, wherein Plaintiff admits "she has a place to stay but that she sometimes likes to rest in nature."[4] (*Id.* at 4). Defendant says the record shows that Plaintiff exercises a choice "as to the location she chooses when she sleeps in her car 'due to her disability.'" (*Id.*)

Even accepting Plaintiff's allegations as true, the Court is unconvinced that her evidence of the prior two citations against these two individuals "cuts in favor of a conclusion that a threat [of prosecution] is specific and credible" to Plaintiff based on her disability. *See Unified Data Servs., LLC*, 39 F.4th at 1211 (finding defendant's action against other parties does not necessarily make the threat of enforcement against plaintiff credible). This is because Plaintiff's factual circumstances differ from those two individuals. Namely, Plaintiff has an apartment with a private parking lot and is authorized to sleep in her vehicle on this lot. (Doc. 45-3 at ¶ 51). Her apparent desire to "sometimes . . . rest in nature" does not change the fact that she is permitted to sleep in her vehicle at her apartment complex. Thus, even adopting her proposed concept of "functionally transient," it cannot be said that Plaintiff is similarly situated to the transient individuals because she has a legally permissible place to sleep. Accordingly, Plaintiff has still not alleged more than a conjectural or hypothetical chance that she will be prosecuted under the Code; the two citations she points to were not issued to persons similarly-situated to Plaintiff. *See Thomas*, 220 F.3d at 1140 (finding "[t]he threat of enforcement based on a future violation—which may never occur—is beyond speculation").

---

[4] The Court takes judicial notice of the September 10, 2022, Department Report for Incident 22011760, which was ostensibly referenced in Plaintiff's FAC, although she alleges it was "[i]n or around October of 2022." (Doc. 45-3 at ¶ 14); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) ("When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested and matters of which the court takes judicial notice.")

- 7 -

The third factor therefore does not weigh in Plaintiff's favor.

### III. Conclusion

In sum, the proposed FAC fails to cure the substantive deficiencies regarding Plaintiff's standing to assert her claims. The Court need not determine whether Plaintiff's proposed FAC states a claim under the ADA or whether the Code is unconstitutional under the Eighth Amendment because Plaintiff fails to establish Article III's standing requirements. *Hart v. Kennedy*, 2019 WL 3767005, at *1 (D. Ariz. Aug. 9, 2019) ("[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits.") (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).

In its prior two Orders, the Court acknowledged that Plaintiff's factual circumstances were unique and could have changed with respect to Defendant's intention to enforce the Code against either Plaintiff or her property manager. (*See* Docs. 37; 44). The Court also invited Plaintiff to update her allegations relating to the status of her lease that was alleged to have expired on May 31, 2022. (Doc. 44 at 4–7). Plaintiff did not do so, and those allegations remain the same. (Doc. 45-3 at ¶¶ 51–55). Plaintiff has therefore alleged insufficient facts to establish imminent enforcement of the Code by Defendant, and the Court will deny Plaintiff's Motion for Leave and dismiss this action.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 45) is **denied with prejudice**. The Clerk of Court shall dismiss this action without further order of this Court.

Dated this 18th day of May, 2023.

Honorable Diane J. Humetewa
United States District Judge